## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

HALE-HALSELL CO.,

              Debtor.

**Filed / Docketed**
**July 1, 2008**

Case No. 04-11677-M
Chapter 11

### MEMORANDUM OPINION

To paraphrase one of the great songs of the 1950s, in bankruptcy cases, compromise is a many splendored thing.[1]  Indeed, were it not for the art of compromise, this case would likely be saddled with sixteen tons of litigation.[2]  The question presently before the Court is whether to approve a compromise involving an enhanced award of fees to counsel.  There have been no objections to the proposed compromise, which would normally ease the task at hand.  However, there is a fly in the ointment:  the compromise runs contrary to the order that authorized the counsel's employment.  The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334(b).[3]  Reference

---

[1]  This phrase is taken from "Love is a Many Splendored Thing," written by Sammy Fain and Paul Francis Webster, and released by the Four Aces.  The song spent three weeks at the top of the Billboard music charts, and won the 1955 Academy Award for Best Original Song (from the movie of the same title).

[2]  The song "Sixteen Tons" released by Tennessee Ernie Ford followed "Love is a Many Splendored Thing" on the Billboard charts.

[3]  Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*. (West 2008).  All other references to federal statutes and rules are also to West 2008 publications.

to the Court of this bankruptcy case is proper pursuant to 28 U.S.C.A. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(A).

### Background

Hale Halsell Company ("HH") filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 22, 2004.  Prior to seeking bankruptcy protection, HH was engaged in the wholesale grocery business.  According to the Initial Report filed by HH on April 19, 2004, HH was solvent when the bankruptcy case was filed, with total stockholders' equity of approximately $14.9 million.[4] On that same date, HH filed schedules showing assets of $43,671,201.38 and liabilities of $34,424,614.55.[5]

On April 12, 2004, the United States Trustee appointed a committee of unsecured creditors pursuant to § 1102(a)(1) (the "Committee").  Three days later, the Committee filed an application (the "Employment Application") seeking approval of two law firms to serve as counsel for the Committee:  Doerner, Saunders, Daniel & Anderson, L.L.P., ("DSDA"), and Pepper Hamilton LLP ("Pepper").[6]  DSDA has offices in Oklahoma City and Tulsa, Oklahoma, while Pepper has offices throughout the United States.  At the time the application was filed, Pepper's normal hourly rates for services performed ranged from $65 per hour for paralegals to $550 per hour for partners.[7]  By

---

[4] *Docket No. 106-2*, Exhibit 1 at 5.

[5] *Docket No. 105.*

[6] *Docket No. 75.*

[7] *See Docket No. 75-3.*  Pepper's ordinary rates have increased while this case was pending.  For example, in the seventh fee application submitted by Pepper, Mr. I. William Cohen states that his ordinary hourly rate is $575, not $550 as stated in the Employment Application. That such hourly rates would increase over time is neither improper nor surprising.

2

way of contrast, the highest hourly rate charged by any DSDA attorney in this case is $235.[8]  In the application for employment, Pepper represented to the Court that "its blended/collective billing rate shall not exceed $275 on an hourly basis.  To the extent that Pepper's actual fees exceed this amount, Pepper agrees to voluntarily reduce its fees in accordance with this agreement."[9]  The effect of this agreement was to ensure that, if one divided the total amount of fees paid to Pepper by the total number of hours worked by Pepper's professionals, the average fee would not exceed $275 per hour.

In the Employment Application, the Committee represented to the Court that it required the services of DSDA and Pepper to assist the Committee on a variety of matters in this case, including but not limited to negotiations with HH and creditors, review and analysis of claims, investigation of the pre-petition conduct of HH and its officers, commencement of contested matters and adversary proceedings, as well as other matters such as the possible sale of the assets of HH.[10]  The employment of DSDA and Pepper was approved by order of the Court entered on April 16, 2004.[11]

One of the major undertakings in the case was the sale of the interests of HH in United Supermarkets of Oklahoma, Inc. ("United") to a third party.  The sale of the United interests involved settlement of litigation between HH and United, as well as ancillary claims made by United against the officers and directors of HH.  Pepper took the lead on behalf of the Committee in the

---

[8]  This is the stated rate of Gary M. McDonald, a partner at DSDA, which was approved as part of the initial employment application.  Although his normal hourly rates have increased over time, Mr. McDonald did not seek an increase in his hourly rate charged over the course of this case.

[9]  *Docket No. 75* at 5.

[10]  *Id.* at 3.

[11]  *Docket No. 79*.

United sale and related litigation.  The sale has now been closed and the litigation resolved.  According to Pepper, at the closing of the sale, the Committee received $5 million to be distributed to creditors, and the potential exists for creditors to receive yet another $4 million from this sale.  If this additional amount is realized, the total distribution to unsecured creditors in this case may approach 100%.

From the time of their appointment to the present date, DSDA and Pepper have continued as counsel to the Committee.  Pepper has submitted nine fee applications to the Court for consideration.  Based upon its review of those applications, it appears that professionals at Pepper have expended a total of 1,046.4 hours on this case.[12]  The hours may be broken down by professional as follows:

---

[12]  Exhibit C to the Ninth and Final Application of Pepper indicates that 15.1 hours were performed by Pepper attorneys that were not billed to the client.  *See Docket No. 2048-4*, Exhibit C.   Those hours were not included in the summary of time listed by task code.  *See Docket No. 2048-3*, Exhibit B at 3.  The Court finds that Pepper used its billing judgment to determine that those hours would not be billed or were otherwise not compensable.  They will therefore not be included in the formula to calculate Pepper's fee award at the "blended rate."  Compensable time in the Ninth and Final Application of Pepper, listed by both task and attorney, amounts to 173.7 hours.  Adding this to the hours reported in the eight previous fee applications, the Court finds that Pepper performed 1,046.4 hours of compensable work over the course of this case.  While the narrative to the Ninth and Final Application of Pepper reports that compensation is sought for 1,054.5 hours, the Court can find no support for this number, and will rely on its own calculation of the hours provided.  *See Docket No. 2048* at 16, 22.

| Timekeeper | Title | Standard Hourly Rate | Total Hours | Fees Requested at Standard Rate | Fees Requested at Blended Rate |
|---|---|---|---|---|---|
| Adler, M. | Partner | $390 | 0.3 | $117 | $83 |
| Cohen, I. | Partner | $490 to $ 575 | 525.1 | $288,875 | $144,403 |
| Hoffman, S. | Partner | $465 to $515 | 15.4 | $7,564 | $4,235 |
| Kayes, D. | Partner | $460 to $545 | 7.9 | $3,857 | $2,173 |
| Leasure, C. | Partner | $395 to $520 | 7.4 | $3,346 | $2,035 |
| Murphy, D. | Partner | $395 to $415 | 3.1 | $1,283 | $853 |
| Petkun, L. | Partner | $440 to $575 | 32.8 | $16,056 | $9,020 |
| Roll, J. | Of Counsel | $380 | 4 | $1,520 | $1,100 |
| Awdish, R. | Associate | $205 to $255 | 16.7 | $4,169 | $4,593 |
| Lehl, D. | Associate | $260 | 25 | $6,500 | $6,875 |
| McCollum, H. | Associate | $250 to $275 | 5.6 | $1,420 | $1,540 |
| Mufson, H | Associate | $170 | 0.4 | $68 | $110 |
| Ostrowski, K | Associate | $236.27 to $240 | 57.7 | $13,726 | $15,868 |
| Skidmore, J. | Associate | $210 | 212.7 | $44,667 | $58,493 |
| Sonnenborn, M. | Associate | $190 | 3.2 | $608 | $880 |
| Alexsy, M. | Legal Assistant | $130 to $170 | 35.9 | $5,403 | $9,873 |
| Meredith, S. | Legal Assistant | $110 | 16.3 | $1,793 | $4,483 |
| Browning, K. | Paralegal | $130 | 10.4 | $1,352 | $2,860 |
| Harner, L. | Paralegal | $175 | 0.3 | $53 | $83 |
| Paull, K | Paralegal | $105 | 5.6 | $588 | $1,540 |
| Sodko, N. | Paralegal | $115 | 2.4 | $276 | $660 |
| Suter, J. | Legal Assistant | $120 to $135 | 42.2 | $5,411 | $11,605 |
| Van Damme, S. | Legal Assistant | $90 | 15.4 | $1,386 | $4,235 |
| Dorda III, E. | Document Clerk | $50 | 0.3 | $15 | $83 |
| Stajniak, E. | Librarian | $80 | 0.3 | $24 | $83 |
|  |  |  |  |  |  |
|  | **TOTALS** |  | **1046.4** | **$410,073** | **$287,760** |

In addition to breaking down hours worked by professional, the time spent by Pepper can also be broken down by subject matter:

| Task | Description | Total Hours | Fees Requested at Standard Rate | Fees Requested at Blended Rate |
|------|-------------|-------------|-------------------------------|-------------------------------|
| B110 | Case Administration | 137.5 | $43,335 | $37,813 |
| B111 | Statement of Financial Affairs, Schedules | 1.7 | $609 | $468 |
| B112 | General Creditor Inquiries | 5 | $2,260 | $1,375 |
| B113 | Pleadings Review/Memos | 6.9 | $3,631 | $1,898 |
| B120 | Asset Analysis and Recovery | 2.5 | $923 | $688 |
| B121 | Account Receivable Collection | 0.2 | $42 | $55 |
| B130 | Asset Sales/Disposition | 33.1 | $10,347 | $9,103 |
| B140 | Relief from Stay/Adequate Protection Proceedings | 18.8 | $5,664 | $5,170 |
| B150 | Creditors Committee | 158.6 | $56,802 | $43,615 |
| B155 | Court Hearings | 3.8 | $1,968 | $1,045 |
| B160 | Fees | 136.1 | $35,253 | $37,428 |
| B160 | Fee Application of Others | 1.1 | $618 | $303 |
| B161 | Fees/Objections | 16 | $5,045 | $4,400 |
| B170 | Employment of Professionals | 5.3 | $1,485 | $1,458 |
| B170.1 | Retention of Others | 13.2 | $5,202 | $3,630 |
| B171 | Employment of Professionals/Objections | 1.3 | $649 | $358 |
| B180 | Avoidance Action Analysis and Proceedings | 1.7 | $721 | $468 |
| B185 | Assumption/Rejection of Leases and Contracts | 3.6 | $1,288 | $990 |
| B190 | Contested Matters/Motions | 16.5 | $8,569 | $4,538 |
| B191 | General Litigation | 3.9 | $2,145 | $1,073 |
| B191.1 | Global Settlement | 18.2 | $9,948 | $5,005 |
| B191.2 | United Supermarkets | 123.7 | $65,636 | $34,018 |
| B194 | Insider Litigation | 1.3 | $312 | $358 |
| B195 | Non-Working Travel | 15.6 | $5,460 | $4,290 |
| B210 | Business Operations | 0.8 | $336 | $220 |
| B211 | Financial Reports | 1.3 | $467 | $358 |
| B220 | Employee Benefits/Pensions | 13.3 | $6,200 | $3,658 |
| B221 | Employee Contracts/Issues | 0.4 | $90 | $110 |
| B230 | Financing/Cash Collateral | 10.8 | $3,678 | $2,970 |
| B231 | Security Document Analysis | 35.1 | $9,219 | $9,653 |
| B240 | Tax Issues | 34.3 | $16,083 | $9,433 |
| B260 | Board of Directors Matters | 10.6 | $3,659 | $2,915 |
| B261 | Investigations | 0.4 | $84 | $110 |
| B310 | Claims Administration- General | 37.2 | $11,711 | $10,230 |
| B311 | Reclamation and PACA Claims | 12.4 | $3,137 | $3,410 |
| B311 | Secured Creditor Issues | 3.4 | $1,234 | $935 |
| B312 | Objections to Claims | 0.4 | $230 | $110 |
| B320 | Plan and Disclosure Statement | 141.8 | $78,925 | $38,995 |
| B430 | Adversary Proceedings & Bankr. Court Litigation | 9.1 | $3,091 | $2,503 |
| B460 | Other- Insurance Matters | 9.5 | $4,021 | $2,613 |
| | | | | |
| | **TOTALS** | **1046.4** | **$410,073** | **$287,760** |

Pepper has been awarded a total of $344,343.96 in interim fees and $10,577.36 in expenses. Some of the interim fees awarded were based on Pepper's standard rates, with the explicit caveat that the total fee request would be adjusted in the final application to reflect a maximum blended rate of $275 per hour.[13] Prior to submission of that final application, Pepper had been paid a total of $237,902.50 in fees.[14] Since that time, the Court has authorized payment of an additional $40,067.50.[15] Under the terms of the order approving Pepper's employment in this case, based on hours worked of 1,046.4 at a blended rate of $275 per hour, Pepper would be entitled to fees of $287,760.00, in addition to the $10,577.36 in unreimbursed expenses.

Pepper has completed all of its work on behalf of the Committee. On May 9, 2007, Pepper filed its Ninth and Final Application for Compensation (the "Ninth Application").[16] In the Ninth Application, Pepper asked the Court to enter a final award of fees based upon a "blended rate" of $325 per hour, rather than the $275 rate that Pepper agreed to in its original application. The effect of such an increase would be to award Pepper $52,320 more than would be allowed using the $275 blended rate.[17] In the Ninth Application, Pepper argued that such an increase was warranted by the

---

[13] For example, in the Third Application [of Pepper] Seeking Compensation and Reimbursement of Expenses, *at Docket No. 931*, Pepper requested and was awarded fees that reflected a blended rate of $309 per hour. This request was combined with the explicit agreement that "Pepper will seek to adjust its fees, at the conclusion of this case, so that the fees throughout the case, on a cumulative basis, are capped at $275/hour." *Docket No. 931* at 2.

[14] *See* Ninth and Final Application [of Pepper] Seeking Compensation and Reimbursement of Expenses, *Docket No. 2048* at 17, 22.

[15] *See* Order, *Docket No. 2094.*

[16] *Docket No. 2048.*

[17] The Ninth Application indicates that the increase sought is $52,725. That number appears to be based on total hours of 1,054.5. As stated *supra*, at note 12, the Court finds that Pepper provided 1,046.4 hours of compensable work in this case, and will use that as a basis for

following circumstances:

1.      The bankruptcy case of HH was more complex than originally anticipated;

2.      While Pepper originally anticipated that most of the work Pepper would be called upon to perform could be done by "younger associates and legal assistants," Pepper later determined that the "services of attorneys at a more senior level" were necessary to perform the tasks needed in this case;[18]

3.      The services performed by Pepper and the results obtained were exceptional; and

4.      An increase in the "blended rate" was justified under § 328(a) of the Bankruptcy Code.

In addition, at a hearing held on May 28, 2008, Mr. I. William Cohen, the partner who executed the application for employment on behalf of Pepper, stated that unanticipated tax and ERISA issues arose as part of the United transaction that required the services of partners at Pepper with expertise in those areas.

The United States Trustee informally objected to the increase in the "blended rate."[19]  As a result, the UST, the Committee, and Pepper began discussions regarding resolution of the fee issue. A settlement was reached whereby Pepper would receive a fee enhancement of $25,000, rather than the enhanced fee of $52,320.[20]  On April 15, 2008, Pepper filed a motion seeking, among other

the awarded fees.

[18]  *Docket No. 2048* at 18.

[19]  *See Docket No. 2326* at 7.

[20]  *See supra* notes 12 and 17 regarding amount of the enhancement requested.

8

relief, approval of the proposed compromise.[21]  Notice has been provided to those entitled to notice.
There have been no objections.

**Discussion**

The standards for approval of a compromise in a bankruptcy case are well established.   The
United States Court of Appeals for the Tenth Circuit has held that when determining whether to
approve a settlement or compromise, it is the Court's duty to make an "informed [decision] based
upon an objective evaluation of developed facts."[22]  Factors to be considered include the likelihood
of success on the merits of the litigation, the difficulties in collection of any judgment that may be
obtained, the complexity and expense of the litigation, the interests of the creditors, and whether the
settlement promotes the integrity of the judicial system.[23]   Orders approving or disapproving a
compromise are reviewed for an abuse of discretion.[24]

*Likelihood of Success on the Merits*

It is important to understand what is presently before the Court.  No one is questioning the
value of Pepper's services, or whether Pepper should be compensated under the terms of its Court-
approved fee arrangement.  No one is suggesting that Pepper should be paid less than they agreed
to be paid.  The question is whether, if the matter were litigated, the Court would be likely to
approve Pepper's requested increase in the "blended rate."

---

[21]  *See* Motion of Pepper Hamilton LLP, Co-Counsel for Official Unsecured Creditors'
Committee, for Approval of Unpaid Pre-Effective Date Fees and Settlement with United States
Trustee, *at Docket 2326.*

[22]  *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).

[23]  *In re Bates*, 211 B.R. 338, 343 (Bankr. D. Minn. 1997).

[24]  *Bank One v. Kallstrom (In re Kallstrom)*, 298 B.R. 753, 757 (10th Cir. BAP 2003).

In support of its argument that a fee enhancement is appropriate, Pepper relies upon § 328(a), which provides that

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. <u>Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.</u>[25]

Section 328(a) is by its terms discretionary: a bankruptcy court is never required to allow compensation different than initially authorized.  In order for a bankruptcy court to adjust a fee arrangement under § 328(a), the court must find that the terms and conditions of the original fee arrangement were improvident, and that the events that caused such terms to be improvident were not known—*and could not have been anticipated*—at the time the original fee arrangement was established.[26]  The burden to establish these conditions lies with the party seeking the fee enhancement.[27]  Interestingly, most published decisions under § 328(a) involve situations where a party is seeking to reduce rather than increase the amount of compensation to be paid to counsel, arguing that unforeseen circumstances make payment of the originally agreed upon compensation improvident.[28]

_____

[25] § 328(a) (emphasis added).

[26] *In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003) (citing *In re Nat'l Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997) and *In re Tex. Sec., Inc.*, 218 F.3d 443, 445–46 (5th Cir. 2000)).

[27] *In re Yablon*, 136 B.R. 88, 91 (Bankr. S.D.N.Y. 1992).

[28] *See, e.g., In re Barron*, 325 F.3d at 691 (reversing bankruptcy court's downward adjustment of contingency fee); *In re Confections by Sandra, Inc.*, 83 B.R. 729 (9th Cir. BAP

In support of its position that § 328(a) should be applied in this case to enhance its fee award, Pepper relies upon two main arguments: (1) the complexity of the case required the involvement of more experienced (and therefore more expensive) counsel than anticipated; and (2) the results achieved in the case were outstanding. The Court is not persuaded that the circumstances of this case justify the enhancement of Pepper's fees under § 328(a).

The Court does not question the complex nature of this case. The problem lies in Pepper's suggestion that the complexity was not apparent or capable of being anticipated at the outset of the case. The petition in this case listed assets of some $49 million and liabilities of almost $33 million. A review of the docket, as it existed prior to the filing of the application to retain Pepper and DSDA, reveals that early in the case issues regarding retention of counsel by HH,[29] providing adequate assurance to utilities,[30] and emergency use of cash collateral[31] were present. In addition, in their application to be employed, Pepper and DSDA stated that their services would be required on a variety of complex matters, including review of the conduct of pre-petition management and exploration of the possibility of sale of the assets of HH. Both of these matters came to pass: Pepper cannot claim they were unanticipated.

The argument that Pepper incurred significant time and expense as a result of unexpected tax and ERISA matters is not borne out by the time records submitted to this Court. In those

---

1987) (same); *In re Churchfield Mgmt. & Inv. Corp.*, 98 B.R. 893 (Bankr. N.D. Ill. 1989) (reducing contingent fee based upon relatively minimal number of hours spent actually resolving legal issue); *In re Benassi*, 72 B.R. 44 (D. Minn. 1987) (reversing decision of bankruptcy court that reduced previously approved contingent fee).

[29] *Docket Nos. 4 and 14.*

[30] *Docket No. 5.*

[31] *Docket No. 17.*

11

applications, Pepper has itemized time spent by both work category and attorney.  Out of a total of 1,046.4 hours billed to this case, 13.3 hours were billed to the category "Employee Benefits/Pensions,"[32] while a total of 34.3 hours were spent on "Tax Issues."[33]  The partners identified with expertise in these two areas incurred a total of 48.2 hours,[34] representing less than 4.6% of the total time billed by Pepper in this case.

Of the total time spent in this case by Pepper professionals of 1,046.4 hours, 525.1 hours were recorded by Mr. Cohen.  By the conclusion of this case, Mr. Cohen's normal hourly rate had reached $575 per hour, which is more than double the blended rate of $275 per hour.  Were it not for Mr. Cohen's hours, the remainder of Pepper's fees would fall well within the $275 per hour blended rate.  Given that Mr. Cohen signed the application for employment on behalf of Pepper, he could hardly be surprised by his heavy involvement in the case.

With respect to the claim that Pepper expected this case to be handled by less experienced (and less expensive) professionals, the Court finds that to be a circumstance that should have been anticipated, and thus outside the parameters of § 328(a).  The application filed by Pepper sought employment of the entire firm, not one or more particular individuals.  When a law firm files an application for employment and lists the professionals that they expect to contribute services to a case, there can be little surprise when those professionals are involved in the case.  The Court is

---

[32]  This category was given the identifier "B220" in the fee applications filed by Pepper, and expressly included "certain ERISA issues relating to the Bank of Oklahoma and its filed ERISA complaint."  *See, e.g., Docket No. 2048* at 9.

[33]  These were identified by Pepper as category "B240."

[34]  Susan Katz Hoffman is identified as a partner and senior member of Pepper's Employee Benefits Group.  Lisa B. Petkun is identified as a partner and member of Pepper's Tax Practice Group.  *See, e.g., Docket 695-8*, Exhibit E.

troubled by the prospect of engaging in a game of hindsight on the issue of which professional should have handled which matter based upon its complexity.  Such an exercise would be little more than a guessing game.

Pepper also argues that the result obtained in this case supports a change in the fee arrangement under § 328(a).  While the Court does not intend to minimize the efforts of Pepper (or any other counsel, for that matter), it rejects the notion that a significant return to unsecured creditors was not foreseeable in this case.  The financial information filed by HH at the inception of the case indicated that HH, with assets in excess of its liabilities, was solvent.  This would suggest the likelihood of a substantial return to creditors.[35]

*Difficulties in Collection of Judgment*

Collection is not an issue in this case.  If the fee enhancement is allowed, there are funds available for payment.  If the fee enhancement is not allowed, those funds will find another destination.

*Complexity and Expense of Litigation*

The Court, while acknowledging that all litigation costs money, does not believe that litigating the issue of the fee enhancement would be unusually complex or expensive.  Indeed, the parties ably advanced their positions in the telephonic hearing held on this matter, agreeing to most, if not all, of the operative facts in the process.

*Whether the Settlement Promotes the Integrity of the Judicial System*

Pepper came into this Court seeking approval of its employment on specific terms.  One of

---

[35]  The Court does not mean to minimize the efforts of Pepper and DSDA in this case by suggesting that a large return to creditors was inevitable.  The Court is merely suggesting that a significant return to creditors was reasonably foreseeable.

13

those terms was that its blended hourly rate would not exceed $275.  Pepper told its client (the Committee) and the judge who considered its employment, "if you approve our employment, there will be a cap upon our effective hourly rates."  This was the deal, and a deal is a deal.  This Court presumes that the Committee as well as the judge who approved Pepper's employment in this case were aware of this representation, and relied upon it in approving Pepper's employment.  Approval of this compromise would serve to vacate (or at least modify) the order which authorized the retention of Pepper.  This judge does not vacate his own orders lightly, and is even more reluctant to vacate an order entered by one of his colleagues absent compelling circumstances.

This Court is troubled by the prospect of a system that allows for compensation arrangements to be changed after the fact, absent the most exceptional of circumstances.  Bankruptcy is designed to be a transparent process, where creditors and the public can easily view and understand what is going on in any particular case.  Fee arrangements between professionals and a bankruptcy estate are to be equally transparent.  This transparency is clouded, if not made completely opaque, if fee arrangements can be routinely adjusted after the fact.  The Committee and the Court had the right to rely upon Pepper's representation that its blended rate would not exceed $275 per hour, and the public had the right to rely upon the Court's retention order to that effect.  Modifying that order on the facts of this case would not promote the integrity of the bankruptcy system.

*Interests of the Creditors*

The interests of creditors in bankruptcy cases center on maximum recovery.  Obviously, if Pepper is not paid a fee enhancement, there will be more money paid to creditors.  This fact is true in every case, and is certainly not a justification for non-payment of professional fees.  The interests of the creditors in this case go beyond mere money.  The creditors have a right to rely upon the

14

representations made by Pepper as it sought employment in this case, just as they have a right to rely upon the order of the Court that approved Pepper's retention.  Those interests will not be served by approval of this compromise.

### Conclusion

This Court is well aware of and agrees with the principle that compromises are to be favored in bankruptcy cases.  However, the principle is not without its exceptions.  The compromise presently before the Court fails to meet the standards contained in § 328(a).  It runs contrary to the representations made by Pepper in its employment application and the order of the Court that authorized said employment.  As such, it should not be approved.

The motion of Pepper Hamilton LLP for approval of its compromise with the United States Trustee is denied.  A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 1st day of July, 2008.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5265.6

15